```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CEMENT MASON'S UNION LOCAL      :   CIVIL ACTION
NO. 592 PENSION FUND, et al.    :   NO. 05-4735
                                :
          Plaintiffs,           :
                                :
     v.                         :
                                :
ALLEN ZAPPONE, et al.           :
                                :
          Defendants.           :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              August 16, 2007

This is an action brought by the trustees of various union benefit funds who seek benefit contributions from an employer for cement finishing work that was performed by members of another union. The union benefit funds claim that the work falls within the scope of a collective bargaining agreement ("CBA") between the their union and the employer. They also contend that, under the terms of that CBA, the employer is obligated to make contributions to the funds regardless of which union does the work. The employer, on the other hand, claims that the CBA does not apply to work performed by members of a different union. It also contends that this very jurisdictional dispute between the two competing unions was resolved by a decision of a national arbitration panel, and therefore that the union benefit funds are barred from seeking contributions for the work under their CBA.

Before the Court are cross-motions for summary judgment. For the reasons set forth below, the Court will deny the union benefit funds' motion for summary judgment and grant the employer's motion for summary judgment.

I.  BACKGROUND

The uncontested facts of this case are as follows. Plaintiffs are a group of multiemployer employee benefit plans that provide retirement, medical and hospitalization, and job training benefits to eligible participants and their beneficiaries (collectively the "Local 592 Funds").[1] Defendants are Far Construction Services, Inc. d/b/a/ Fabi Construction, Inc., a New Jersey corporation ("Fabi Construction"), and Fabi Concrete, LLC, a Pennsylvania limited liability company ("Fabi Concrete") (collectively referred to as "Fabi"). Defendants are engaged in the business of concrete construction in the states of New Jersey and Pennsylvania.

Fabi is bound to two separate collective bargaining agreements ("CBAs") with two independent unions that both perform

---

[1] The plaintiffs are the Cement Mason's Union Local No. 592 Pension Fund ("Pension Fund"); the Cement Mason's Union Local No. 592 Welfare Fund ("Welfare Fund"); the Cement Mason's Union Local No. 592 Apprenticeship Training Fund of Philadelphia and Vicinity ("Apprenticeship Fund"); the General Building Contractors' Association Inc. Industry Advancement Program ("IAP"); and the Cement Mason's Union Local No. 592 Political Action Committee ("PAC").

cement finishing work in Philadelphia, Pennsylvania. Specifically, Fabi Construction is a party to a CBA with Local 592, Cement Masons Union, an affiliate of the Operative Plasterers and Cement Masons International Association of the United States and Canada (the "Cement Masons" or "Local 592").[2] Fabi Concrete is also a party to a CBA with Local 2 of the International Union of Bricklayers and Allied Craftworkers ("BAC" or "Local 2").[3] Both CBAs provide for payment of contributions to the two unions' benefit funds for work performed within the scope of the two CBAs.

On March 28, 2005, Fabi Concrete entered into a subcontracting agreement with a general contractor to perform cement finishing work on the Symphony House Construction Project in Philadelphia, Pennsylvania. On June 13, 2005, Fabi Concrete assigned the work on the project to BAC Local 2. While the work was being performed, Fabi made contributions to the BAC Local 2 benefits funds for each hour worked by BAC Local 2 members. Fabi Concrete did not pay benefits to the Local 592 Funds for work

---

[2] Technically, Fabi Construction is an Associate Member of the General Contractors Association ("GBCA"), and the GBCA has entered into a CBA with Local 592.

[3] Technically, Fabi Concrete entered into an independent agreement in which it agreed with Local 2 to be bound by a CBA between Local 2 and the Building Contractors Association of Delaware and the Building Contractors Association of New Jersey. The Local 592 Funds "accept the claim that Fabi has a valid collective bargaining agreement with BAC Local 2 for the purposes" of summary judgment. See Pls.' Mot. at 3 n.4.

performed by BAC Local 2 on the Symphony House project.[4]

As a result of Fabi's refusal to make contributions to the Local 592 Funds, the Local 592 Funds initiated this lawsuit seeking payment of the contributions pursuant to §§ 502 and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 & 1145.

II.  CROSS MOTIONS FOR SUMMARY JUDGMENT

Fabi moves for summary judgment requesting that the Local 592 Funds' complaint be dismissed in its entirety (doc. nos. 24, 25).  The Local 592 Funds move for partial summary judgment on the issue of liability (doc. no. 26).  The Court will analyze the motions as cross-motions for summary judgment under Federal Rule of Civil Procedure 56.

    A.   Legal Standard for Summary Judgment

When confronted with cross-motions for summary judgment "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Falcone v. Teamsters Health & Welfare Fund, 489 F. Supp. 2d 490 (E.D. Pa. 2007) (Robreno, J.) (quoting 10A Charles A. Wright, Arthur R.

---

[4] On one occasion, at the outset of the project, Fabi made a small payment to the Local 592 Funds.  Fabi claims that this payment was the result of a clerical error on its part.

Miller & Mary Kane, <u>Federal Practice and Procedure</u> § 2720 (1998)).  Thus, with respect to each party, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Court will analyze the parties' cross-motions in the order of their filing.  Therefore, the Court will first look to Fabi's motion for summary judgment, filed earlier in time, and then analyze the Local 592 Funds' motion for partial summary judgment.

    B.   <u>Fabi's Motion for Summary Judgment</u>

Fabi advances two arguments in support of its motion for summary judgment.  First, Fabi argues that, pursuant to the Local 592 CBA, Fabi is not obligated to make contributions to the Local 592 Funds for work that was performed by BAC Local 2.  Second, Fabi argues that this litigation is essentially a minor battle in a longstanding jurisdictional war between BAC and the Cement Masons, and that, because the jurisdictional dispute over the Symphony House project was resolved in favor of BAC Local 2 in an earlier proceeding, the Local 592 Funds cannot pursue an ERISA claim for work deemed outside Local 592's jurisdiction.

-5-

>   1.   <u>The Local 592 CBA does not provide for payment of contributions to the Local 592 Funds under these circumstances.</u>

Section 515 of ERISA states, in relevant part:

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  For § 515 to apply, the conditions triggering an obligation under the relevant CBA agreement must first be met. <u>Teamsters Individual Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.</u>, 989 F.2d 132, 138 (3d Cir. 1993) (noting that CBAs trigger obligations under ERISA § 515 and that plaintiffs are "not entitled to enforce a nonexistent contractual obligation").

Here, the Local 592 CBA creates no obligation for Fabi to pay the Local 592 Funds for work performed by BAC Local 2. Article XIII(a) of the Local 592 CBA states that contributions to the Local 592 Funds are based on hours worked by "an employee, as the term employee is define[d] in Article I hereof."  Article I defines "employees" to include "Cement Masons (including Cement Mason foremen) and Cement Mason Apprentices."  The capitalization of the term "Cement Masons" in the definition of employee suggests that "employees" only includes members of the Cement Masons Local 592.  Article 3 of the Local 592 CBA also mandates that "any employee to whom this Agreement is applicable [who] is not . . . already a member of the Union . . . must "become a

member of the Union" within a certain amount of time.  <u>Id.</u>, Art. 3.  This language also suggests that the Local 592 CBA contemplates that "employees" means members of the Cement Masons Local 592.

In addition, Article VII(2) provides that Fabi must contribute to the Apprenticeship Fund "for each hour worked for which wages or compensation . . . are payable to any employee <u>performing work covered</u> by the terms of this agreement."  Local 592 CBA, Art. VII(2) (emphasis added).  The BAC Local 2 members performing work on the Symphony House were not performing work covered by the Local 592 CBA.  Rather, the work that they were performing was covered by the BAC Local 2 CBA.

This case is nearly identical to the case facing the Sixth Circuit in <u>Trs. for Mich. BAC Health Care Fund v. OCP Contrs., Inc.</u>, 136 Fed. App'x 849, 851 (6th Cir. June 17, 2005). There, the Sixth Circuit recognized, albeit in a non-precedential opinion, that "[i]n situations where an employer is exposed to conflicting CBAs that purport to impose a duty to 'double pay' for the same job, the collecting trustee must show that the CBA created a contractual obligation for the employer to make contributions to both plans, even though only one union did the work."  <u>Id.</u> (citing <u>Trs. of the B.A.C. Local 32 Ins. Fund. v. Ohio Ceiling & Partition Co.</u>, 48 Fed. App'x 188, 198 (6th Cir. 2002)).  The CBA in that case stated that contributions to the

union benefit funds "shall be paid on all Employees working under this Agreement." Id. "Employees" were defined, however, as "Bricklayers & Allied Craftworkers Local Union # 9 Michigan of the International Union of Bricklayers and Allied Craftworkers." Id. The Sixth Circuit concluded that the relevant CBA created no duty for the employer to contribute to the union benefit funds for work performed by members of another union:

> First, the workers who did the work were not "Employees" under the terms of the CBA because they were not "Bricklayers & Allied Craftworkers Local Union # 9 Michigan of the International Union of Bricklayers and Allied Craftworkers." Toledo Local 886 workers were the only workers on the Michigan jobs. Secondly, the GBA requires that the work be done "under this Agreement." The Toledo Local 886 workers did not work under OCP's CBA with Michigan Local 9, they worked under OCP's CBA with Toledo Local 886. Lastly, the CBA is simply silent on the issue of double paying.

Id. at 152.

In this case, as in OCP Contractors, the workers who worked on the Symphony House project were not employees under the terms of the Local 592 CBA because they were not Local 592 members. Nor did they perform work under the Local 592 CBA; they performed work under the Local 2 BAC CBA. Finally, the Local 592 CBA is silent on the issue of double paying. In sum, the Local 592 Funds have failed to show that there is a genuine issue of material fact whether Fabi had a contractual obligation under the Local 592 CBA to make contributions for work performed under a competing CBA. Accordingly, Fabi is entitled to judgment as a

matter of law.

        2.    The Symphony House Project is not Within the <u>Territorial Jurisdiction of the Local 592 CBA.</u>

There is a second reason that Fabi is not obligated to pay the Local 592 Funds for work performed by BAC Local 2.  The Local 592 CBA states that "[t]his Agreement shall be binding in the existing territorial jurisdiction of the Union," which includes Philadelphia.  Local 592 CBA, Art. 2.  Importantly, it further provides:

> The parties hereto agree to be bound with the territorial jurisdiction of this agreement by the terms and provisions of the Agreement dated June 1, 1973 establishing the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry [the "National Plan"].  In particular, the parties agree to be bound by those provisions of the agreement requiring compliance "with the decisions and awards of the Board [and] Appeal Board of Hearing Panel" Decisions rendered under the Plan shall be final, binding, and conclusive on the parties.

<u>Id.</u>, Art. 16.

In other words, if the National Plan decides that the Symphony House project is outside of Local 592's territorial jurisdiction, then the Local 592 CBA does not apply to work performed on the Symphony House project, because by its own terms, the Local 592 CBA is only binding within Local 592's territorial jurisdiction.  And here, as discussed below, pursuant to a National Plan decision, the Symphony House project is outside of Local 592's territorial jurisdiction.  Thus, the Local

592 CBA does not apply to work on that project.

> (a) The jurisdictional dispute over the Symphony House project was resolved in favor of BAC.

Initially, both the Cement Masons Local 592 and BAC Local 2 claimed territorial jurisdiction over the Symphony House project pursuant to their respective CBAs with Fabi. However, as referenced in the Local 592 CBA itself, the two unions are bound to the National Plan, which mandates an exclusive mechanism for the resolution of jurisdictional disputes between the Cement Masons and BAC. On January 28, 2004, as a result of continuing jurisdictional disputes between the Cement Masons and BAC in recent years - of which the instant case is but one manifestation - the National Plan's Joint Administrative Committee held a special hearing before a three-arbitrator panel to fashion a remedy "to alleviate the continuing jurisdictional disputes between the [BAC] and the [the Cement Masons]." Decision of the National Plan Panel at 2. After "an arduous review of the evidence," the National Plan panel decided that: "Henceforth, all jurisdictional disputes between the BAC and the [Cement Masons] shall be resolved in favor of the work assignment of the involved employer." In the instant controversy, Fabi assigned the Symphony House project to BAC Local 2, thereby resolving the

jurisdictional dispute in its favor.[5]

With the jurisdictional dispute resolved in favor of BAC Local 2, the Local 592 CBA is not applicable to the cement finishing work on the Symphony House project.  Thus, Fabi has no obligation to contribute to the Local 592 Funds for that work.

> (b)   Fabi is Entitled to Raise the Defense of a
>        Settled Jurisdictional Dispute.

The Local 592 Funds argue that ERISA § 515 prevents Fabi from raising the jurisdictional award as a valid defense to the Local 592 Funds' claim.  Local 592's position, in essence, is that "[t]he 'jurisdictional dispute' argument here is no different than other defenses, which are not apparent on the face of the contract,[6] and which Congress rejected in enacting Section 515."  Pls.' Mot. at 7.

It is true that in enacting ERISA § 515, Congress intended to "permit trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law."  126 Cong.

---

[5]   In addition, after BAC Local 2 filed a complaint with the National Plan, the Cement Masons Director of Jurisdiction formally disclaimed the cement finishing work on the Symphony House project.  See Letter of Michael J. Gannon to Richard Resnick (June 21, 2005).

[6]   As an initial matter, the Court notes that in this case the "jurisdictional dispute" argument is apparent on the face of the Local 592 CBA pursuant to Article XVI of the agreement.

Rec. 23,039 (1980) (remarks by Rep. Thompson). And it is also true that in certain instances, courts have held that the mere fact that an award of benefits could cause an employer to "pay double" is not sufficient to relieve the employer of its contractual obligation to make contributions to the ERISA funds. See Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2d Cir. 1990) ("[O]nce an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole." (citations omitted)); O'Hare v. Gen. Marine Transp. Corp., 740 F.2d 160, 170 (2d Cir. 1984) (purchase of equivalent health care insurance for employees did not excuse failure to contribute to funds); Brogan v. Swanson Painting Co., 682 F.2d 807, 809-10 (9th Cir. 1982) (cash payments to nonunion employees in an amount equal to the contributions did not itself excuse the obligation to contribute to the trust funds). Thus, the Court must decide whether, under the circumstances present here, an employer may raise the resolution of a jurisdictional dispute as a defense to a union benefit fund seeking contributions under a CBA.

In support of its position, the Local 592 Funds cite the Seventh Circuit's non-precedential decision in Trustees of Glaziers Union Local No. 27 Welfare & Pension Funds v. Gibson, 99 Fed. App'x 740, 741 (7th Cir. Apr. 20, 2004). In that case, the

Seventh Circuit held in favor of a union seeking contributions to its benefit funds, notwithstanding the fact that the employer had assigned the work to a second union:

> [I]f a CBA with X union directs that contributions to a designated fund must be made for hours worked on a job covered by the CBA, the fund can insist on payment even if the work is done by members of union X or by persons unaffiliated with any union.  The Fund's claim is based on the terms of the CBA, not on principles of labor law.  If the CBA provides that contributions to the Fund are to be made for glazing work, [the employer] cannot avoid his obligations by assigning that work to nonunion members or, as here, members of a different union. . . .  The Fund . . . is like a holder in due course in commercial law or a receiver for a failed bank.  It does not have to divine which workers [an employer] will select for a job. . . .  The time to avoid paying double here was before the work was done by getting an agreement or a pre-work resolution of the dispute.  After the work was done was too late.

Id. at 742 (internal citations omitted).

Glaziers Union is inapplicable here for two reasons. First, as the Seventh Circuit emphasized, in Glaziers Union, the employer "essentially admit[ted] that the work on the two questioned projects is covered by the glazier CBA."  99 Fed. App'x at 742.  Here, Fabi does not admit that the Symphony House project's cement finishing work was covered by the Local 592 CBA. As discussed exhaustively above, it is clear that the Local 592 CBA creates no obligation for Fabi to pay the Local 592 Funds for work performed by BAC Local 2.[7]

---

[7] Because the Local 592 CBA states that it is not "binding" where the National Plan decides jurisdictional disputes against Local 592, the admonition of Rhode Island Carpenters

Second, in Local 30, United Slate, Tile & Composition Roofers, AFL-CIO v. NLRB ("Gundle"), 1 F.3d 1419 (3d Cir. 1993). the Third Circuit expressly rejected a major premise of the Seventh Circuit's reasoning in Glaziers Union, namely, that there is a distinction between seeking the work covered by a collective bargaining agreement and seeking the payment of wages and other benefits associated with that work. In Gundle, an employer entered into two collective bargaining agreements with two different unions: Local 30 and Local 172. Id. at 1420. After the employer assigned work on a particular job to Local 172, members of Local 30 picketed the job site. Id. at 1421. As a result, the employer filed an unfair labor practice charge against Local 30, alleging that the picketing had the objective of seeking the reassignment of the work in violation of the National Labor Relations Act, 29 U.S.C. § 158(b)(4). After a hearing on the merits, the National Labor Relations Board recognized that both unions had legitimate contractual claims to the disputed work, but decided the jurisdictional dispute by awarding the work to Local 172. Id.

Subsequently, Local 30 filed a grievance alleging that

---

Annuity Fund v. Trevi Icos Corp., 474 F. Supp. 2d 326, 333 (D.R.I. 2007), is also inapplicable here. See id. ("[A]n employer may be placed at risk of double payment requirements for benefit fund contributions [but] this outcome is avoidable by placing appropriate language in the CBA to preclude a double payment possibility.").

the employer had breached the CBA and sought damages, including benefit fund contributions.  Id. at 1422.  An arbitrator found in favor of Local 30 and directed the employer to "make whole those individuals who were deprived of work opportunities, including the payment of dues, wage and benefit fund contributions required by the labor contract."  Id. (emphasis added). Local 30 then sought enforcement of the arbitration award in federal district court.  Id.

On appeal, the Third Circuit stated that "[t]he crux of the issue before us is whether the arbitration award . . . is inconsistent with or contrary to the Board's assignment of the work to Local 172."  Id. at 1427.  The Third Circuit then held that it was inconsistent.  Id.  "The distinction Local 30 seeks to draw between seeking the work and seeking payment for the work is ephemeral:"

> [Th]e valuable part of a right to a particular job is the right to be paid for it.  Thus, a jurisdictional dispute between two groups of employees as to which is entitled to certain work is in essence a dispute as to which shall receive compensation for that work.  The opportunity sought to perform labor is significant only as a means of obtaining compensation.  It follows that if workmen, who are entitled to a job under the terms of the labor contract, agree to forego the obligation of working but not the concomitant right to payment, they have not disclaimed any significant right.  When, as in this case, one group insists that work, for which another group has contracted and is being paid, be assigned it, the fact that both groups are claiming pay for the same work suffices to create a jurisdictional dispute, and it is irrelevant that either group, or both, may manifest a willingness to take the pay and forego the work.

Id. at 1427-28 (quoting NLRB v. Local 1291, Int'l Longshoremen's Assoc., 368 F.2d 107, 110 (3d Cir. 1966)).[8]

The upshot of this logic is clear.  Once a union has lost a jurisdictional dispute, it cannot then turn around and seek enforcement of other rights under the CBA, including the payment of benefit fund contributions it would otherwise have received under its CBA with the employer.  Cf. Carpenters Fringe Benefit Funds v. McKenzie Eng'g, 217 F.3d 578, 592 (8th Cir. 2000) ("Because Local 166 did not invoke [the NLRB's inter-union jurisdictional dispute procedure], the Funds are not entitled to contributions for work assigned to members of a competing union within the jurisdiction of that union.").

The Local 592 Funds rely heavily on Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364 (1984), to argue that an arbitration award of territorial jurisdictional cannot be used against a union's benefit fund.  Schneider is inapposite to this case.  In Schneider, two union benefit funds filed a federal action seeking contributions from two employers for work performed by members of their union.  Id. at 366-67.  The CBA

---

[8] In so holding, the Third Circuit expressly rejected an earlier Seventh Circuit case, which found no inconsistency in awarding backpay to a union even though the NLRB had ruled against that union on a jurisdictional claim.  Id. (citing Hutter Constr. Co. v. Int'l Union of Operating Engs., Local 139, 862 F.2d 641 (7th Cir. 1988)).  Thus, the Court predicts that the Third Circuit would similarly reject the Seventh Circuit's holding in Glaziers Union.

required the arbitration of any "differences . . . between the Company and the Union or any employee of the Company as to the meaning or application of the provisions of [the CBA]." Id. at 367.  The district court dismissed the action pending arbitration of the dispute, but the Eight Circuit reversed.  Id.  The Supreme Court was thus presented with the question of "whether the [union benefit] funds may seek [contributions] against a participating employer without first submitting to arbitration an underlying dispute over the meaning of a term in the employer's collective-bargaining agreement."  Id. at 365.  In deciding that the benefits funds were not required to submit their claims to arbitration, the Supreme Court noted that "the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between [benefit fund] trustees and employers . . . ."  Id. at 372.  It then held that "[w]ithout the presumption of arbitrability, the agreements at issue here evidence no intent on the part of the parties to require arbitration of disputes between the [union benefit funds] and the employers."  Id. at 372.

As in Schneider, this case involves union benefit funds seeking contributions from an employer, but that is where the similarities between Schneider and this case end.  This Court is confronted with an entirely different question than that facing

-17-

the Supreme Court in Schneider.  Here, the question is whether, under the present circumstances, an employer may raise the resolution of a jurisdictional dispute as a defense to the union benefit funds' demand for contributions under a CBA.  The Court is not being asked to compel the union benefit funds to submit their claim to arbitration, as the employers sought in Schneider.  Rather, the employer is seeking to bar a claim for contributions for work that a national arbitration panel awarded to a different union.  In other words, Schneider may prevent Fabi from compelling the Local 592 Funds to arbitrate their claim, but Schneider does not prevent Fabi from raising the defense that the National Plan awarded the work for which the Local 592 Funds seek contributions to a different union.

### 3.   Conclusion

There is no genuine issue of material fact that Fabi is not under a contractual obligation to make contributions to the Local 592 Funds.  The Local 592 CBA does not provide for payment of contributions to the Local 592 Funds for work performed by members of a competing union.  Moreover, as a result of the National Plan decision, the Symphony House project is not within the territorial jurisdiction of the Local 592 CBA.  Thus, by its own terms, the Local 592 CBA does not apply to the Symphony House work.  Accordingly, Fabi's motion for summary judgment will be

granted.

    C.   The Local 592 Funds' Motion for Partial Summary Judgment

The Local 592 Funds have also moved for partial summary judgment on the issue of liability.  However, as discussed above, there is no genuine issue of material fact that Fabi is not under a contractual obligation to make contributions to the Local 592 Funds.  Without such a contractual obligation, the Local 592 Funds cannot establish liability against Fabi pursuant to the Local 592 CBA.  Accordingly, the Local 592 Funds' motion for partial summary judgment will be denied.

**III. CONCLUSION**

For the foregoing reasons, Fabi's motion for summary judgment will be granted, and the Local 592 Funds' motion for partial summary judgment will be denied.  An appropriate order, granting judgment in favor of Fabi and against the Local 592 Funds, will be entered.

```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CEMENT MASON'S UNION LOCAL      :    CIVIL ACTION
NO. 592 PENSION FUND, et al.    :    NO. 05-4735
                                :
          Plaintiffs,           :
                                :
     v.                         :
                                :
ALLEN ZAPPONE, et al.           :
                                :
          Defendants.           :
```

### **O R D E R**

**AND NOW,** this **16th** day of **August, 2007,** it is hereby **ORDERED** that Defendants' Motion for Summary Judgment (doc. no. 24) is **GRANTED.**

It is **FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (doc. no. 26) is **DENIED.**

It is **FURTHER ORDERED** that **JUDGMENT** shall be entered in favor of Defendants and against Plaintiffs.

**AND IT IS SO ORDERED.**

                                         S/Eduardo C. Robreno
                                         **EDUARDO C. ROBRENO, J.**